**HOWARD PUBLICATIONS, INC.
d/b/a The Times, Appellant
(Intervenor Below),**

v.

**LAKE MICHIGAN CHARTERS, LTD.,**
Appellee (Intervenor—Objecting
Party Below).

**CITY OF HAMMOND, Indiana,
a Municipal Corporation,
Plaintiff (Below),**

v.

**GREAT LAKES INLAND MARINA, INC.,**
Marina Entertainment Complex, Inc.,
Mercantile National Bank of Indiana, as
Trustee under Trust Agreement No.
4594, dated January 9, 1985; Mercantile
National Bank of Indiana, as Trustee
under Trust Agreement No. 4970), dated
May 28, 1987; AXG Corp.; Marianne
Potter; Auditor of Lake County,
Indiana; and Treasurer of Lake County,
Indiana, Defendants (Below).

No. 45A03–9409–CV–326.

Supreme Court of Indiana.

Dec. 6, 1995.

*ORDER DENYING TRANSFER*

Pursuant to Ind. Appellate Rule 11(B)(5), the Appellant's petition to transfer is denied with opinion dissenting to denial of transfer.

/s/ Randall T. Shepard
Randall T. Shepard
Chief Justice of Indiana
FOR THE COURT

DeBRULER and DICKSON, JJ., vote to deny transfer.

SULLIVAN, J., votes to grant transfer with opinion dissenting to denial of transfer.

SHEPARD, C.J., votes to grant transfer and joins the opinion of SULLIVAN, J.

SELBY, J., is not participating.

---

SULLIVAN, Justice, dissenting from the denial of the petition for transfer.

In *Howard Publications, Inc., d/b/a The Times v. Lake Michigan Charters, Ltd.* (1995), Ind.App., 649 N.E.2d 129, the Court of Appeals affirmed a trial court's grant of protective orders enjoining publication of certain information disclosed to the court during discovery. By a divided 2–2 vote, one justice not participating, our court has denied the appellant's petition to transfer. Ind. Appellate Rule 11(B)(5). Chief Justice Shepard and I voted to grant transfer in this case and vacate the restraining order issued by the trial court against *The Times*.

The information enjoined from publication was obtained when a newspaper reporter entered the trial judge's office and requested an opportunity to review the court file at issue. Among the material furnished the reporter by court staff were certain documents tendered by a non-party for *in camera* review pursuant to a discovery order. Though in an envelope marked "privileged documents for in camera review," the reporter asserted that the envelope was unsealed and its contents readily accessible. In any event, the reporter returned to the judge's office the next day, obtained permission from the staff to photocopy documents in the file, and photocopied the documents submitted by the non-party for *in-camera* review. *Howard Publications,* 649 N.E.2d at 131.

In determining the extent of constitutional protection due the press, the chief purpose of the freedom of the press clause is generally, if not universally, described as preventing previous restraints upon publication. *Near v. Minnesota,* 283 U.S. 697, 713, 51 S.Ct. 625, 630, 75 L.Ed. 1357 (1931). For this reason, any prior restraint of expression bears a heavy presumption against its constitutional validity. *New York Times Co. v. United States,* 403 U.S. 713, 714, 91 S.Ct. 2140, 2141–42, 29 L.Ed.2d 822 (1971) (the Pentagon Papers case) (*quoting Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 70, 83 S.Ct. 631, 639, 9 L.Ed.2d 584 (1963)). The interest advanced by the Court of Appeals, preserving the integrity of the judicial system by assuring the availability of protective orders to protect the discovery procedure, fails to overcome this presumption. The United States Reports are filled with cases in which the United States Supreme Court has rejected justifications on prior restraint, some at least as, if not more, compelling than that. *See, e.g., Minneapolis Star and Tribune Co. v. Minnesota Commissioner of Revenue,* 460 U.S. 575, 103 S.Ct. 1365, 75 L.Ed.2d 295 (1983) (rejecting a state's interest in raising revenue); *Smith v. Daily Mail Publishing Co.,* 443 U.S. 97, 99 S.Ct. 2667, 61 L.Ed.2d 399 (1979) (finding unjustified a state's interest in preserving the anonymity of its juvenile offenders); *Landmark Communications, Inc. v. Virginia,* 435 U.S. 829, 98 S.Ct. 1535, 56 L.Ed.2d 1 (1978) (finding insufficient a state's interest in preserving the anonymity of judges subject to disciplinary proceedings); *Oklahoma Publishing Co. v. District Court,* 430 U.S. 308, 97 S.Ct. 1045, 51 L.Ed.2d 355 (1977) (rejecting a state's interest in preserving the anonymity of its juvenile offenders); *Nebraska Press Association v. Stuart,* 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976) (overcoming state's interest in protecting a criminal defendant's Sixth Amendment right to a fair trial); *Cox Broadcasting Co. v. Cohn,* 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975) (rejecting a state's interest in preserving the anonymity of victims of sexual assault and the right of privacy); *New York Times Co. v. United States, supra* (publication of Pentagon Papers, alleged to have been stolen from Department of Defense, could not be enjoined despite a claim of national security); and *Near v. Minnesota, supra* (protecting public officials from libel).

The Court of Appeals reliance on *Seattle Times v. Rhinehart,* 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984), where the Supreme Court approved a trial court injunction against publication of certain discovery information, is misplaced. In that case, the newspaper enjoined was a litigant and the trial court imposed its restraint only on publication of information received by the newspaper pursuant to the newspaper's own discovery request. The Supreme Court observed that, "[a]lthough litigants do not 'surrender their First Amendment rights at the courthouse door,' *In re Halkin,* [598 F.2d 176, 186 (D.C.Cir.1979)], those rights may be

subordinated to other interests that arise in this setting." *Seattle Times*, 467 U.S. at 32 n. 18, 104 S.Ct. at 2207 n. 18. On the facts of that case, the Court found that where the Seattle Times, as a litigant, obtained information "pursuant to a court order that both granted [it] access to that information and placed restraints on the way in which the information might be used," its First Amendment rights did not "comprehend[ ] the right to disseminate" the information obtained. *Id.* at 32, 104 S.Ct. at 2207. Because the newspaper in the case before us was not in any way a party to the litigation, *Seattle Times* is inapplicable.

Furthermore, while the trial court justified its protective order on grounds that the information enjoined from publication was "unauthorizedly examined and copied from the [trial] Court's file," that is not an adequate justification for prior restraint, at least in this case. As noted above, in the case before us the reporter was permitted by court staff to review the documents in question and copy them. In this respect, the case is very much like *Cox Broadcasting Corp. v. Cohn, supra*, where a reporter learned the identity of the victim of a rape from an examination of indictments made available for his inspection by the court clerk in the courtroom during a recess of the alleged rapist's trial. *Id.*, 420 U.S. at 474 n. 3, 95 S.Ct. at 1035 n. 3. The Supreme Court held that the state could not impose sanctions on the accurate publication of the name of the rape victim because the First and Fourteenth Amendments require that press may not be prohibited from "truthfully publishing information released in official court records." *Id.*, 420 U.S. at 496, 95 S.Ct. at 1047. *See also Oklahoma Publishing Co. v. Oklahoma County District Court*, 430 U.S. at 310, 97 S.Ct. at 1046 (holding unconstitutional prior restraint of publication of juvenile's name obtained from court records on authority of *Cox Broadcasting*). *Cox Broadcasting* and *Oklahoma Publishing* clearly stand for the proposition that a court may not restrain or punish the press for publishing information provided by or in the court itself, even if inadvertently. Justice White, the author of *Cox Broadcasting*, would later describe that case as standing for the proposition that "the State cannot make the press its first line of defense in withholding private information from the public—it cannot ask the press to secrete private facts that the State makes no effort to safeguard in the first place." *The Florida Star v. B.J.F.*, 491 U.S. 524, 544, 109 S.Ct. 2603, 2615, 105 L.Ed.2d 443 (White, J., dissenting).

Accordingly, Chief Justice Shepard and I vote to grant transfer and vacate the trial court's injunction.

DeBRULER and DICKSON, JJ., vote to deny transfer.

SELBY, J., is not participating in this case.